# In the United States Court of Federal Claims

| | |
|---|---|
| RON A. MCDOW,<br><br>                *Plaintiff*,<br><br>    v.<br><br>THE UNITED STATES,<br><br>                *Defendant*. | No. 21-732 T<br><br>(Filed: October 3, 2024) |

Greg H. Oakley, BuildLaw PLC, Nashville, TN, for plaintiff.

Katherine R. Powers, Tax Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting in Part and Denying in Part the Government's**
**Motion to Dismiss the First Amended Complaint**

**SILFEN,** *Judge*.

      Ron A. McDow filed suit in this court seeking refunds of his federal income taxes for 2012, 2013, and 2014. The government moves to dismiss Dr. McDow's claims as untimely. Dr. McDow concedes that 26 U.S.C. § 6511 bars his refund claim for 2014 but maintains that his claims for the 2012 and 2013 tax refunds and his claim for a 2013 account credit are timely. The government has not shown that the court lacks jurisdiction to hear Dr. McDow's claims or that he has failed to state a claim for 2012 or 2013. Thus, this court **grants** the government's motion to dismiss Dr. McDow's claim for a refund for tax year 2014 and **denies** the government's motion to dismiss for tax years 2012 and 2013.

1

I.  **Background**

Dr. McDow is a medical doctor and the owner of CryoSurgery, Inc., a medical device sales company. ECF No. 42-2 at 2, 10; ECF No. 48 at 3.[1]

A.  **Tax year 2012**

Dr. McDow filed his 2012 income tax return in November 2013. ECF No. 48-1 at A-3. Dr. McDow reported a tax liability of $468,022, a withholding payment of $397,454, and an estimated tax payment of $100,000, which he had paid in January 2013. *Id*. Because Dr. McDow's total payment ($497,454) was more than he owed ($468,022), he was eligible for a tax credit of $29,432, which he elected to carry forward to the next tax period. *Id*. at A-7. Around August 2016, Dr. McDow put together an amended return for 2012. The amended return requested a refund of $287,000 for 2012. ECF No. 52-1 at 1; ECF No. 42-4 at 1.[2] Dr. McDow states that he mailed the amended return to the IRS on August 22, 2016. ECF No. 68 at 4 [¶9]; ECF No. 68-2. IRS records do not show that the IRS received an amended return from Dr. McDow until April 2022, when he filed another form. ECF No. 48-1 at A-3. The IRS disallowed that amended return in October 2022. *Id*.

B.  **Tax year 2013**

Dr. McDow sent the IRS $1,566,247.97 to cover his estimated 2013 tax liability on January 2, 2014. ECF No. 48-1 at A-7. The IRS received that payment and applied it as an estimated tax payment for 2013. *Id.* at A-7. In April 2015, Dr. McDow's accountant, Joseph Spivey,

---

[1] This decision accepts as true the factual allegations in Dr. McDow's pleadings. *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) ("In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff.").

[2] The amended return also noted an alleged overpayment of $1,596,248, but that money appears to be part of his tax-year-2013 accounting, discussed below, and not actually part of his tax-year-2012 accounting. ECF No. 52-1 at 1; ECF No. 42-4 at 1.

2

attempted to electronically file Dr. McDow's 2013 income tax return. ECF No. 42 at 2 [¶5]; ECF No. 1 at 12 (Dr. McDow's original, prepared 2013 tax return attached to the original complaint but not attached to the amended complaint). The return Mr. Spivey attempted to file did not note the $1,566,247.97 payment Dr. McDow had already submitted. *Id*. It reported a total tax liability of $841,356 and a total tax payment of $539,255 (consisting of $409,823 in withheld taxes, $29,432 in tax credit applied from the 2012 return, and $100,000 in 2013 estimated tax payments), leaving a sum of $302,709 in taxes owed. ECF No. 1 at 12. The IRS's electronic system rejected the filing and notified Mr. Spivey of the rejection. ECF No. 42 at 2 [¶5].

The IRS sent Dr. McDow a notice in 2016 requesting that he file his 2013 tax return and stating that he had existing credits of $1,596.247.97 on his tax account. *See, e.g.*, ECF No. 48-1 at A-15. When he received the 2016 notice, Dr. McDow asked his new accountant, Troy Brewer, to request that the IRS refund some of his 2013 tax payment. ECF No. 68 at 3 [¶6]. Mr. Brewer prepared a Form 843 for Dr. McDow, requesting the refund of the 2013 tax credit. ECF No. 63-1 at 1-2 [¶3]. Dr. McDow alleges that he signed and mailed the Form 843 to the IRS on December 21, 2016. ECF No. 68-1. The IRS does not have a record of receiving it. ECF No. 48-1 at A-7.

The IRS sent Dr. McDow another notice on March 12, 2018, notifying him that the IRS still had not received his tax return for 2013. *Id*. at A-20. Dr. McDow states that he did not receive that notice. ECF No. 51 at 5. In June 2018, Mr. Brewer filed a tax return for the 2013 tax year on Dr. McDow's behalf. ECF No. 48-1 at A-7; ECF No. 42-2 at 2. Dr. McDow believed that Mr. Spivey had filed his original tax return and thus believed that Mr. Brewer was filing an amended return. ECF No. 54-1 at Supp. App. 23 [¶15]. Dr. McDow's new tax return reported a tax liability of zero dollars, a total payment of $592,003, and an overpayment of $592,003. ECF No. 48-1 at A-30. The return requested that the IRS refund the overpayment amount. ECF No. 42-2 at 2. The

return did not note the $1,596,247.97 credit on Dr. McDow's account. *Id*. On June 24, 2019, the IRS issued a notice of disallowance, explaining that the 2013 refund claim came too late. ECF No. 48-1 at A-25. After sending Dr. McDow the notice, the IRS removed from his account the 2013 credit of $1,566,815.97 and the 2012 overpayment credit of $29,432. *Id*. at A-20.

Notably, in 2020 Dr. McDow filed a malpractice suit in Tennessee against Mr. Spivey for negligent accounting services for the 2013 tax year. ECF No. 54-1 at Supp. App. 21-22. In that complaint, Dr. McDow alleged that Mr. Spivey did not take affirmative steps to ensure that Dr. McDow's 2013 tax return was timely filed or to tell Dr. McDow that the IRS had rejected the first filing. *Id*. at 25-27. Dr. McDow alleged that, "[d]uring the time of Mr. Spivey's silence, the federal limitations period for Dr. McDow to obtain a refund for overpayment of his 2013 income taxes expired." *Id.* at 24 [¶25]. He sought damages for the loss of $1,596,247.97 in overpaid taxes. *Id.* at 26. Mr. Spivey passed away, and in 2022, Dr. McDow dismissed the malpractice suit. ECF No. 54 at 6 n.6.

### C.     Tax year 2014

Dr. McDow filed his 2014 income tax return on October 15, 2015. ECF No. 48-1 at A-12. Dr. McDow reported a tax liability of $66,294 and withholding of $66,375. *Id*. The IRS issued Dr. McDow a refund of $81.00 in November 2015. *Id*. In August 2018, Dr. McDow filed an amended return for 2014 reporting zero income tax liability, zero payments, and no overpayment. *Id.* The 2014 amended return did not request a refund. *Id.*

*     *     *

Dr. McDow filed suit in this court in January 2021 requesting refunds for tax years 2012, 2013, and 2014. ECF No. 1. The government moved to dismiss. ECF No. 48. After the motion was fully briefed, the court held an oral argument on the motion. At the oral argument, Dr. McDow's counsel stated that he might have further evidence in support of his complaint. He submitted further

evidence over the next few weeks (ECF Nos. 57, 61, 63, 66, 67, 68), and then the government had an opportunity to respond (ECF No. 72). The motion is now ripe for review.

## II.   Discussion

The government moves to dismiss Dr. McDow's amended complaint, arguing that (1) the court lacks jurisdiction to hear his refund claims for tax years 2012 and 2014 because he filed his request for administrative relief after the limitations period in 26 U.S.C. § 6511(a) expired; and (2) Dr. McDow fails to state a claim upon which relief can be granted for tax year 2013 because he waited too long after first making his estimated tax payment to request administrative relief, under 26 U.S.C. § 6511(b)(2)(A).

On a motion to dismiss under rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration*, *Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1), (h)(3); *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quotation marks omitted)).

A complaint should be dismissed under rule 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). To avoid dismissal, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court will accept well-pleaded factual allegations as true and draw all reasonable inferences in the claimant's favor. *Lindsay*, 295

F.3d at 1257. A "plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express*, 739 F.3d at 692.

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with exclusive jurisdiction to decide specific types of monetary claims against the United States. *Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994); 28 U.S.C. § 1491(a)(1). "Jurisdiction under the Tucker Act is exclusive in the Court of Federal Claims for claims above $10,000." *Kanemoto*, 41 F.3d at 644.

The Tucker Act waives sovereign immunity for lawsuits seeking tax refunds, but only when the relevant requirements in the tax code are met. *United States v. Clintwood Elkhorn Min. Co*, 553 U.S. 1, 4-5, 8-9 (2008). Before filing in this court, the tax code requires that the taxpayer first seek a refund from the IRS. 26 U.S.C. § 7422(a). The tax code states, "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected … until a claim for refund or credit has been duly filed with the Secretary." *Id.* The administrative filing requirement of section 7422(a) is a jurisdictional limitation. *Brown v. United States*, 22 F.4th 1008, 1011 (Fed. Cir. 2022) (explaining that, under *United States v. Dalm*, 494 U.S. 596, 609-10 (1990), filing is a jurisdictional requirement, while the adequacy of that filing is a claims-processing requirement); *see Clintwood*, 553 U.S. at 7 ("Five 'any's' in one sentence and it begins to seem that Congress meant the statute to have expansive reach.").

The tax code further requires the taxpayer to file a claim with the IRS for administrative relief "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 28 U.S.C. § 6511(a); *see Dalm*, 494 U.S. at 602 ("[U]nless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a),

6

a suit for refund … may not be maintained in any court."). A three-year look-back period from the date the taxpayer files the refund claim further limits the total refund the taxpayer can claim. 26 U.S.C. § 6511(b)(2)(A).

### A. The government has not demonstrated that Dr. McDow failed to timely file his amended return for 2012

Dr. McDow made an estimated tax payment for tax year 2012 in January 2013 and filed his income tax return on October 15, 2013. ECF No. 48-1 at A-3. Dr. McDow needed to request any refund for 2012 within three years of his filing, or within two years of payment, whichever was later. 26 U.S.C. § 6511(a). In this case, Dr. McDow needed to request a refund by October 15, 2016—three years after his filing date. *See also* ECF No. 48-1 at A-3 (two years from his payment date was January 16, 2015, so three years from filing was later). According to the IRS records provided by the government, Dr. McDow did not file a request for a refund for 2012 until April 28, 2022. *Id*.

Dr. McDow argues that he timely filed an amended tax return requesting a refund in August 2016. He argues that the IRS conceded that it cannot locate his tax-year-2012 files, and that the documents he provided are sufficient to overcome the presumption that the IRS's electronic records are correct. ECF No. 51 at 2, 5. To support his position, Dr. McDow produced several pieces of evidence, including a signed copy of his amended tax return for 2012 requesting a refund, a copy of the certified mail receipt to the IRS, and several declarations. ECF No. 52-1; ECF No. 66-1; ECF No. 68; ECF No. 68-2. Those pieces of evidence came to the court over time, not all with his complaint or amended complaint. The signed copy of the 2012 amended tax return shows a requested refund of $287,000 and is signed by both Dr. McDow and his account, Mr. Spivey, dated August 20, 2016. ECF No. 52-1. After the court held a hearing on this motion to dismiss, Dr. McDow produced a copy of a certified mail receipt dated August 22, 2016, addressed to the IRS

7

and stamped by the Nashville Post Office. ECF No. 68-2. Dr. McDow also belatedly submitted declarations, including one from his assistant who located the additional documents (ECF No. 66-1) and two from Dr. McDow (ECF No. 52; ECF No. 68). In his latest declaration, Dr. McDow attests that the 2016 mail receipt corresponds to the 2012 amended tax return that he and Mr. Spivey signed and filed in August 2016. ECF No. 68 at 4 [¶9].[3]

The government agrees that, at least right now, it cannot locate the paper files for Dr. McDow's tax returns for 2012, but it notes that it has the electronic records of his account. ECF No. 48 at 3 n.2; ECF No. 48-1 at A-3, A-12. Dr. McDow's Form 4340 for 2012 shows no record of the IRS having received an amended return, or any other document, before April 2022. ECF No. 48-1 at A-3.

There is a strong presumption that the IRS records are correct, and it is the taxpayer's burden to overcome that presumption. *See United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242-43 (2002); *Thomas v. United States*, 56 Fed. Cl. 112, 121, 123 (2003). The IRS's Form 4340 "can provide the basis for finding that a taxpayer has not filed a return." *Wheeler v. Commissioner*, 446 F. App'x 951, 953 (10th Cir. 2011). But IRS regulations provide specific forms of evidence that can overcome that presumption. *See Davis v. United States*, 43 Fed. Cl. 92, 94 (1999), *aff'd* 230 F.3d 1383 (Fed. Cir. 2000). For example, a taxpayer can submit proof that he delivered the document to the IRS or that he properly addressed the document and sent it via certified mail. *Id.* A certified mail receipt and evidence that the taxpayer properly addressed the envelope to the agency

---

[3] Dr. McDow filed an earlier declaration alongside his response to the motion to dismiss. ECF No. 52. In the earlier declaration, Dr. McDow attested that he had instructed Mr. Spivey to file the amended return, that he followed up, and that Mr. Spivey assured Dr. McDow that he had filed the amended return. *Id.* at 1 [¶3]. Dr. McDow's second declaration attests that he mailed the amended return himself. ECF No. 68 at 3-4 [¶8]. Dr. McDow's second declaration does not address the discrepancy regarding who mailed the amended return for 2012. *Compare* ECF No. 68 *with* ECF No. 52.

collectively constitute prima face evidence that the Postal Service delivered a document to the IRS. 26 C.F.R. § 301.7502-1(e).

The evidence that Dr. McDow has provided is sufficient to overcome the presumption in favor of the IRS at the motion-to-dismiss stage. *See Davis*, 43 Fed. Cl. at 94; *Taha v. United States*, 148 Fed. Cl. 37, 43-44 (2020). Dr. McDow has provided a certified mail receipt for a document addressed to the IRS on August 22, 2016, and a declaration stating that he mailed the amended 2012 return in August 2016, linking the amended return to the mail receipt. ECF No. 68; ECF No. 68-2. The receipt bears a dated postmark from the post office, which a postal worker would normally stamp to indicate that he or she received a corresponding envelope. *See* USPS Form 3800, April 2015 (Reverse), https://store.usps.com/store/product/certified-mail-receipt-forms-P_FORM_3800 ("To ensure that your Certified Mail receipt is accepted as legal proof of mailing, it should bear a USPS postmark. If you would like a postmark on this Certified Mail Receipt, please present your Certified Mail item at a Post Office for postmarking."). This court has explained that evidence that a taxpayer sent a document via certified mail constitutes prima facie evidence that the Postal Service delivered the document to the IRS. *Taha*, 148 Fed. Cl. at 43-44.

The government argues that the certified mail receipt alone is not sufficient to overcome the presumption that the IRS records are correct. According to the government, which relies on *Hess v. Commissioner of Internal Revenue*, Nos. 22332-85, 22334-85, 1989 WL 88928 (T.C. August 10, 1989), the IRS regulations require Dr. McDow to show both a certified mail receipt and an envelope that is correctly addressed to the IRS with the certified mail sticker attached to it. ECF No. 72 at 9-10. *Hess* involved mailings to a court rather than the IRS but, like here, involved tax mailing deadlines. In *Hess*, a taxpayer submitted certified mail receipts and testimonial evidence that she had sent documents to the court before the deadline via certified mail. *Hess* at *6-7. The

court received the mail late, and the mail was postmarked after the deadline, even though the certified mail receipts were postmarked before the deadline. *Id.* at *2. The postage on the envelope was not enough for certified mail, and no witness could explain the deficient postage or relate the certified mail receipts to particular mailed envelopes. *Id.* at *5, *7. The court determined that, although the certified mail receipts bore timely postmarks, the envelopes bore untimely postmarks; the court resolved the factual question of the date of mailing against the taxpayer. *Id.*

Here, there is no similar discrepancy. Beyond the IRS's records, there are no documents that refute Dr. McDow's argument that his amended tax return was mailed on August 22, 2016, and he has produced a photocopy of a certified mail receipt with that date and the address of the IRS on it. Because the IRS has not found any record of Dr. McDow's amended tax return, there is no envelope to compare to the certified mail receipt. And at this stage, factual questions regarding the veracity of the evidence must be resolved in Dr. McDow's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (at a motion to dismiss, "the court [is] obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor."). Thus, at this stage, Dr. McDow's complaint will not be dismissed on the basis of his not having the envelope or a copy of the envelope that he alleges he mailed to the IRS.

The government also argues that Dr. McDow's testimony and documents are insufficient, so the court should not consider them. ECF No. 72 at 10-12. The government argues that, for the photocopy of the certified mail receipt, there is a "genuine question raised about the original's authenticity." *Id*. at 11 (quoting Federal Rule of Evidence 1003). According to the government, a taxpayer must keep a "complete and detailed record" for any refund, credit, or abatement that he seeks. *Id*. at 12 (citing 26 C.F.R. § 31.60001-1(c)). The government alleges that Dr. McDow does not have a complete and detailed record for any of his claims. *Id*.

The government is correct that Dr. McDow's declarations and briefs to this court contain a number of inconsistencies. *See supra* 8 n.3; *infra* 13 n.4, 13 n.5; *compare* ECF No. 54-1 at Supp. App. 24 [¶25] ("During the time of Mr. Spivey's silence, the federal limitations period for Dr. McDow to obtain a refund for overpayment of his 2013 income taxes expired.") *with* ECF No. 51 at 2-5 (arguing that Dr. McDow timely filed for a refund for 2013). And the government is correct that Dr. McDow was unable to provide anything more than photocopies of certified mail receipts, and those photocopies have the tracking numbers cut off. ECF No. 66.

But that does not render his documents inadmissible at this stage. As this court explained, in a case that the government cites (ECF No. 72 at 10), the court has broad discretion over whether to admit a photocopy of a document, and the party challenging the admission of the copy has the burden of challenging "the accuracy of the copy or authenticity of the original from which [the copy was] made." *McMullan v. United States*, No. 130-76, 1978 WL 4200 at *7 (Ct. Cl. Aug. 21, 1978). So far, the government has only challenged the authenticity of the certified mail receipt based on its being a photocopy. The thing the document purports to be—a certified mail receipt— is the type of document that, according to IRS regulations, prima facie establishes that the Postal Service delivered the mail to the IRS. 26 CFR § 301.7502-1. The government can still challenge the authenticity of the certified mail receipt and can still challenge whether the mail actually contained the amended tax return for 2012 at summary judgment or trial, and the government will have the opportunity to review the documents, depose the witnesses, and present any necessary expert testimony.

Dr. McDow has met his burden at the motion-to-dismiss stage to show that he filed a request for a refund for 2012 within the required timeframe.

11

### B. The court interprets Dr. McDow's attempts to recover his 2013 tax overpayment as an informal tax refund request

Dr. McDow carried forward a tax credit of $29,432 from 2012 that the IRS credited to him on April 15, 2013, and he made an estimated tax payment for tax year 2013 of $1,566,815.97 on January 2, 2014. ECF No. 63-2 [¶3]; ECF No. 48-1 at A-7. Dr. McDow needed to claim any refund for 2013 within three years of his filing, or within two years of payment, whichever was later. 26 U.S.C. § 6511(a). The government does not dispute that Dr. McDow filed a tax return in 2018 at the latest and that the time bar of section 6511(a) is not implicated for his tax year 2013. But the government argues that the three-year look-back period of section 6511(b)(2)(A) applies. Section 6511(b)(2)(A) states, "If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." If Dr. McDow first filed a tax return in 2018, he would only be eligible to recover payments made in 2015 or later. In contrast, if he filed a tax return on January 2, 2017 or earlier, his look-back period would include the payment made on January 2, 2014.

Dr. McDow argues that he made several attempts to file his taxes and to claim a refund for 2013. Dr. McDow points to an attempted filing in April 2015. ECF No. 42 at 2 [¶5]; ECF No. 1 at 12. The IRS electronic filing system rejected that filing. ECF No. 42 at 2 [¶5]. Having not yet received a tax return for 2013 for Dr. McDow, the IRS issued a notice in December 2016 giving him a short window to file his tax return. ECF No. 48-1 at A-15 (notice on form CP80). Dr. McDow alleges that he received that notice in December 2016 and retained a new accountant, Mr. Brewer, to file a document with the IRS claiming the credit on his account as a refund for 2013. ECF No.

68 at 2-3 [¶¶3-7].[4] Believing that Dr. McDow's previous accountant, Mr. Spivey, had filed a Form 1040 for 2013, Mr. Brewer prepared a Form 843, which represents a request for a refund. *See* ECF No. 63-1; ECF No. 68-1. The form states that Dr. McDow was submitting it "in response to claim the credit due as per the CP80 notice of $1,596,247.97 for the tax year form 1040." ECF No. 68-1. Dr. McDow signed the Form 843 on December 21, 2016, and alleges, with a photocopy of a certified mail receipt, that he sent it via certified mail on the same day. ECF No. 68-1.

Later, in 2018, the IRS sent Dr. McDow delinquency notices notifying him that the IRS had not received a tax return for 2013. ECF No. 48-1 at A-20. After the IRS sent the last of those notices to Dr. McDow, he filed a new Form 1040 for tax year 2013 on June 20, 2018. ECF No. 42 at 2 [¶5].[5] That new Form 1040 did not include a request for the full credit of $1,596,247.97; it only requested $592,003. ECF No. 42-2 at 2. The IRS rejected that document on June 24, 2019, as untimely. ECF No. 48-1 at A-25.

### 1.     Dr. McDow's Form 843 meets the requirements for an informal claim

As an initial matter, Dr. McDow must demonstrate that he filed a timely refund claim for the 2013 tax year. The IRS electronic filing system rejected Dr. McDow's attempted April 2015 filing, and electronic returns only count as filed once the system accepts them. *See* IRS Pub. 1345, Authorized IRS E-file Providers of Individual Income Tax Returns Handbook at 7 (Nov. 2023) ("An electronically filed return isn't considered filed until the IRS acknowledges acceptance of the electronic part of the tax return for processing."). Thus the only timely document Dr. McDow claims to have submitted to the IRS is the Form 843 that Mr. Brewer prepared for Dr. McDow in

---

[4] Dr. McDow's original declaration notes that he received that notice, but he did not identify any steps he took in response to the notice until his second declaration. *Compare* ECF No. 52 at 2 [¶5] *with* ECF No. 68 at 2-4 [¶¶5-8].

[5] Earlier Dr. McDow argued that he never received that notice from the IRS. ECF No. 51 at 5.

13

December 2016. The IRS's electronic system does not show that it received that document, but Dr. McDow has provided a certified mail receipt from December 21, 2016, stamped by the Nashville Post Office, and addressed to the IRS, and argues that it corresponds to his mailing of the Form 843. ECF No. 68 at 3-4 [¶6-8]; ECF No. 68-1. As discussed above, a certified mail receipt, even in photocopy, prima facie establishes that the Postal Service delivered the mail to the IRS. Therefore, for purposes of this motion to dismiss, the court accepts that Dr. McDow's documents demonstrate that he timely submitted a Form 843 to the IRS for tax year 2013.

The government argues that even if this court accepts Dr. McDow's evidence as a timely filing of his Form 843, the court still lacks jurisdiction over tax year 2013 because Dr. McDow failed to "duly file" his claim when he submitted the wrong document to the IRS. ECF No 72 at 14 (citing 26 U.S.C. § 7422(a)). The government argues that because Form 843 is neither a tax return, nor an amended tax return, the court cannot accept it as a duly filed refund request to establish jurisdiction over Dr. McDow's 2013 claims. *Id*. at 14-17.

The government is correct that Form 843 does not satisfy the requirements for a formal tax refund request. *See Fulham v. United States*, No. 20-cv-5871, 2021 WL 5578759, at *4 (N.D. Ill. Nov. 30, 2021). Here, however, Dr. McDow's Form 843 contains sufficient information to put the IRS on notice that he was seeking a refund of $1,596,247.97 for tax year 2013 and notes that it was a credit on his account. ECF No. 68-1. That notice can serve as an informal claim for a refund, which the courts have long recognized as a valid claim. *See United States v. Kales*, 314 U.S. 186, 194 (1941); *Computervision Corp. v. United States*, 445 F.3d 1355, 1364-65 (Fed. Cir. 2006); *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct. Cl. 106, 114 (1963).

A valid informal claim requires three components: It must (1) be submitted within the limitations period, (2) have a written component, and (3) apprise the IRS that a refund is sought, for

14

a particular year or years. *Computervision*, 445 F.3d at 1364–65 (citing *Kales*, 314 U.S. at 194). The totality of the facts and circumstances determine whether a taxpayer has satisfied the requirements for an informal claim. *Furst v. United States*, 230 Ct. Cl. 375, 380 (1982); *American Radiator*, 162 Ct. Cl. at 114 ("The focus is on the claim as a whole, not merely the written component."); *Newton v. United States*, 143 Ct. Cl. 293, 300 (1958). A taxpayer must perfect his informal claim by later filing a formal claim, before bringing suit in court. *Kales*, 314 U.S. at 194 (An informal notice "will nevertheless be treated as a claim, where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period."); *PALA, Inc. Employees Profit Sharing Plan & Trust Agreement v. United States*, 234 F.3d 873, 879 (5th Cir. 2000) ("[C]ourts will excuse harmless noncompliance with the formalities prescribed for refund claims" if the taxpayer later corrects the formal deficiencies. (quotation marks omitted)); *cf. Greene–Thapedi v. United States*, 549 F.3d 530, 533 (7th Cir. 2008) ("Because [the plaintiff] failed to perfect her administrative claim for a refund …, the district court lacked subject matter jurisdiction.").

Although Dr. McDow has not briefed the issue of an informal filing, his Form 843 would have adequately put the IRS on notice that he was seeking a refund for tax year 2013, and the document meets the requirements for an informal claim. *See Fulham*, 2021 WL 5578759 at *3 (contemplating accepting a Form 843 as an informal refund claim if the taxpayer had perfected the claim); *see also Night Hawk Leasing Co. v. United States*, 18 F. Supp. 938 (Ct. Cl. 1937) (accepting an informal refund claim written on the back of a check); *Kaffenberger v. United States*, 314 F.3d 944, 955 (8th Cir. 2003) (accepting an incorrect IRS form, Form 4868, as an informal refund claim). Dr. McDow alleges, and the court accepts at this stage, that he mailed the Form 843 on December 21, 2016, which would be timely. Dr. McDow's Form 843 includes a written component

15

notifying the IRS that he was filing it in response to the IRS's notice, and the document identifies the tax year and the amount that Dr. McDow sought. ECF No. 68-1.

Dr. McDow later filed his tax return for 2013 on June 20, 2018. Neither Dr. McDow nor the government addresses perfecting Dr. McDow's informal refund claim. Presumably, the government has not addressed it because Dr. McDow did not brief the informal-claim issue in the first place. To perfect a claim, the taxpayer must remedy defects in the informal claim, including lack of specificity, by filing a formal refund request. *See Kales* at 194. There is no specific timeframe in which a taxpayer must perfect his informal claim, but there are two guiding principles for timely perfecting a claim. First, the taxpayer must perfect his claim before the IRS acts upon or rejects the informal claim. *Dixon v. United States*, 67 F.4th 1156, 1162 (Fed. Cir. 2023). Second, the taxpayer must perfect the claim before initiating litigation against the IRS. *Id.* at 1162-63.

While the court on a motion to dismiss will not decide whether Dr. McDow adequately and timely perfected his claim, it is plausible that he did.[6] The court will also not decide, at this point, whether to accept Dr. McDow's evidence as credible, because those determinations should not ordinarily be made on a motion to dismiss. It is notable, though, that at least at one point Dr. McDow thought he had run out of time to file his 2013 refund claim, because he sued Mr. Spivey alleging that Mr. Spivey allowed "the federal limitations period for Dr. McDow to obtain a refund for overpayment of his 2013 income taxes [to] expire[ ]." ECF No. 54-1 at Supp. App. 24 [¶25].

Dr. McDow's Form 843 contains sufficient information to qualify as an informal claim.

---

[6] The amount Dr. McDow may be eligible to recover is unclear because each of his attempts to receive a refund for 2013 has listed a different sum. *Compare* ECF No. 1 at 12 (original 2013 tax return, rejected in 2015, listing $302,709 in owed taxes) *with* ECF No. 68-1 (Form 843 filed in December 2016, requesting a refund of $1,596,247.97) *with* ECF No. 42-2 (2013 tax return filed in June 2018, requesting a refund of $592,003).

16

### 2. Dr. McDow cannot recover his 2013 tax credit under his alternative theories

In Dr. McDow's complaint, he raises two additional theories for recovery of his 2013 tax credit. ECF No. 51 at 2-5. First, he asserts that he timely filed his amended return for 2012 in August 2016 and can claim the credit for tax year 2012 instead of 2013. Second, he asserts that he is eligible to receive the credit because the IRS system still listed it on his account as of at least July 3, 2019. Dr. McDow cannot recover his 2013 tax credit under either of those theories.

As an initial matter, a taxpayer is eligible to receive a refund for an overpayment only for the tax year for which he made that payment. *See* 26 U.S.C. § 441 (Annual taxable income is "computed on the basis of the taxpayer's taxable year."). Thus, Dr. McDow cannot request a tax refund for 2012, and claim an overpayment of taxes for 2013, with the same payment. The payment for tax year 2013 is not an "overpayment from [his] original return" for tax year 2012, as explained on the amended return Form 1040X.

Tax overpayments for one year may be transferred as "tax credits" to future tax periods, as Dr. McDow elected to do with his 2012 overpayment. But there must first be an overpayment, which the IRS can compute only after the taxpayer files a timely return for the tax year. *See Sumner v. United States*, 71 Fed. Cl. 627, 629 (2006) (explaining that it is a taxpayer's duty to file a timely return requesting a refund and that "the IRS has no legal duty to discover overpayments and report them to taxpayers—despite its extensive databases and access to information"); *Deutsche Bank AG v. United States*, 95 Fed. Cl. 423, 436 (2010) ("It is the data that is actually submitted by the taxpayer with its return—and not all information available to the IRS from some other source—that must enable the IRS to calculate the tax liability shown on the return."). Until Dr. McDow filed a tax return for 2013 demonstrating that the payment he made was greater than his actual tax

liability for that tax year, there was no "overpayment" for 2013 to transfer to another year. The tax liability for 2013 had not yet been calculated.

And Dr. McDow understands—and argued to another court—that his overpayment of $1,566,247.97 in January 2014 was intended to cover tax year 2013. ECF No. 54-1 at Supp. App. 24 [¶25], 26 [¶41] (Dr. McDow arguing that "the federal limitations period for Dr. McDow to obtain a refund for overpayment of his 2013 income taxes expired" and therefore that Mr. Spivey owed him damages for the loss of $1,596,247.97 in overpaid taxes).

Dr. McDow's argument that he is eligible for the 2013 refund because it remained in the IRS system until at least July 2019—after the time to claim it had passed—also does not help him. The IRS issued a notice of disallowance for his 2013 tax return on June 24, 2019. ECF No. 48-1 at A-25. The IRS provided Dr. McDow with a copy of his Form 1040 on July 3, 2019, noting the $1,596,247.97 credit. ECF No. 51-2. The IRS then removed the tax credits for 2013 from his account on July 15, 2019. *Id*. Even if Dr. McDow's electronic Form 1040 had continued to show a tax credit after July 15, 2019, the statute controls, not an electronic account record that may not be up to date. *See Hamlet v. United States*, 63 F.3d 1097, 1104 (Fed. Cir. 1995) (explaining that agency statements in printed materials are not binding if they "contravene a statute"); *Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) ("[F]ederal agencies … have broad authority to correct their prior errors."); *Idorsia Pharmaceuticals Ltd. v. Iancu*, 393 F. Supp.3d 445, 453-54 (E.D. Va. 2019), *aff'd*, No. 2019-2346, 811 F. App'x 650 (Fed. Cir. May 11, 2020) ("[P]laintiff's remarkable claim that it should be awarded [additional patent term] in accordance with the computer program's erroneous calculations, corrected by the PTO on reconsideration, fails."); *see also generally W. Co. of N. Am. v. United States*, 323 F.3d 1024, 1032 (Fed. Cir. 2003) (IRS "general counsel memoranda and revenue rulings" are not binding on the court). The statute,

as discussed above, prohibits Dr. McDow from receiving those tax credits if he is too late in requesting them. 26 U.S.C. § 6511(b)(2)(A).

### C. Dr. McDow's claim for tax year 2014 is barred because he failed to file a claim for a refund for 2014

Dr. McDow's claim for a tax refund for the tax year 2014 is barred because he did not satisfy the administrative prerequisites. Dr. McDow acknowledges that he failed to file his refund request in time and concedes that his claim for 2014 is barred by sections 7422 and 6511. ECF No. 51 at 1. This court does not have jurisdiction over his 2014 tax refund claim. *See, e.g.*, *Stephens v. United States*, 884 F.3d 1151, 1156 (Fed. Cir. 2018) (even an amended return, when it did not request a refund of an overpayment for prior tax years, was not a refund claim); *Gluck v. United States*, 84 Fed. Cl. 609, 613 (2008) ("In addition to satisfying the full payment rule, a plaintiff must also have filed a claim for a refund with the IRS for the amount of the tax at issue in compliance with … § 7422(a).").

## III. Conclusion

For these reasons, this court **grants** the government's motion to dismiss Dr. McDow's claim for a 2014 tax refund and **denies** the government's motion to dismiss Dr. McDow's claims for 2012 and 2013 refunds.

**IT IS SO ORDERED.**

                                                  s/ Molly R. Silfen
                                                  MOLLY R. SILFEN
                                                  Judge